UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.  06-025 (PLF) |
| | : | |
| TARA D. JACKSON, | : | |
| | : | |
| Defendant | : | |

GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing.  For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to a period of intermittent confinement, to be followed by a period of supervised release.

I.      BACKGROUND

On February 6, 2006, the defendant, Tara D. Jackson pled guilty to a one-count felony Information charging her with Theft of Mail Matter by an Officer or Employee, in violation of 18 U.S.C. § 1709.  During her plea colloquy, the defendant admitted that between June 1, 2004 and July 29, 2005, she stole $6,308.73 in money orders and gift cards from the United States mail while she was working as a Mail Processing Clerk for the United States Postal Service in the District of Columbia.

U.S. Postal Inspectors were alerted to the defendant's scheme on May 27, 2005, after a postal service customer filed a complaint with the United States Postal Inspection Service regarding the theft of a Global Express Money Order that the customer had mailed to her landlord as rent payment.  When the customer discovered that her landlord had not received the

money order, she called Global Express and learned that it had been cashed on May 7, 2005. The customer obtained a copy of the money order and observed that the words "Henry's Auto Insurance Company" had been hand-written in black ink on top of the original "payee" section of the money order along with the name "Tara D. Jackson" and the address "3330 Ely Place S.E."

Upon reviewing personnel records, postal inspectors learned that a person by the name of "Tara Denise Jackson," (the defendant herein) with an address of "3330 Ely Place, S.E., Washington, D.C." was employed by the U.S. Postal Service as a mail processing clerk at the Curseen-Morris postal facility in the District of Columbia. In her capacity as a mail processing clerk, the defendant directly handled thousands of pieces of mail per day.

On June 9, 2005, postal inspectors conducted a surveillance of the defendant as she processed mail through an Optical Character Recognition ("OCR") machine and observed her tearing open pieces of mail and manipulating them with her fingers in order to expose the contents. After examining the envelopes, the defendant returned the rifled letters to the stream of mail being processed by the OCR machine.

The next day, postal inspectors again observed the defendant rifling through pieces of mail. Later that morning, postal inspectors confronted the defendant and she agreed to a post-Miranda interview. During the interview, the defendant admitted that she had stolen six gift cards from various pieces of mail. The defendant also admitted to stealing money orders from the mail, explaining that she would remove these items from envelopes in the mail stream, hide them on her person, and take them out of the building later in her shift. The defendant told investigators that she used the money orders to pay her creditors, including her cable and car

insurance bills, by writing her personal information on top of the original information contained on the money orders and sending them to her creditors. Inspectors discovered that the defendant stole and converted nineteen money orders to her own use.

After the defendant entered her plea in this case on February 6, 2006, she was released on a personal recognizance bond to be supervised by D.C. Pretrial Services. One of the conditions of her release was that she participate in a drug evaluation. On February 17, 2006, the defendant tested positive for cocaine, and was subsequently placed at CATAADA House for drug treatment.

## II.     SENTENCING CALCULATION

### A.     Statutory Maxima

The maximum sentence for Theft of Mail Matter by Officer or Employee, pursuant to 18 U.S.C. § 1709, is five years confinement. The maximum fine is $250,000.

### B.     Sentencing Guidelines Calculation

The Pre-Sentence Report (hereinafter "PSR") calculates the offense level under the United States Sentencing Guidelines as eight. See PSR ¶ 33. This includes the base offense level of six pursuant to U.S.S.G. § 2B1.1(a)(2), a two-level enhancement for "loss" amount between $5,000 and $10,000 pursuant to U.S.S.G. § 2B1.1(b)(1); a two-level adjustment for Abuse of Position of Public Trust pursuant to U.S.S.G. § 3B1.3; and a two-level decrease for an adjustment for Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1(a). Under the United States Sentencing Guidelines, the applicable sentencing range for an offense level of eight is zero to six months within Zone A.

In their plea agreement, the parties did not include a two-level adjustment for Abuse of Position of Public Trust within their calculation. Although the government acknowledges that

the United States Probation Office stands by its calculation of an offense level eight, the government intends to honor the agreement it made with the defendant that the applicable guideline calculation is offense level six. The government also acknowledges that it is the Court that makes the final determination of the applicable guideline range.

The government also notes that offense level eight and offense level six each carry the same guideline range of zero to six months. The PSR writer does not find factors indicating that a departure from the prescribed sentencing guidelines is warranted. See PSR ¶100. For the reasons set forth, infra §III of this Memorandum, the government respectfully requests that the Court sentence the defendant within the guideline range to a period of intermittent confinement, to be followed by a period of supervised release.

**III.  GOVERNMENT'S SENTENCING RECOMMENDATION**

In determining the appropriate sentence, the Court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The Court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(D).

Normally, for an offense level that falls within Zone A, the government would not oppose a period of probation. However, because the defendant has a prior felony conviction for Welfare Fraud for which she received probation, and prior misdemeanor convictions for simple assault and destruction of property for which she received probation, the government

4

respectfully requests that she be sentenced to a period of intermittent confinement to be followed by a term of supervised release. During any term of supervised release, the defendant should be required to participate in drug treatment as recommended by probation.

The defendant's conduct involved defrauding customers of the United States Postal Service – an entity in which the public places its trust on a daily basis. The owners of the money orders that the defendant stole undoubtedly counted upon the United States Postal Service to safely deliver these money orders to their intended destinations. Postal inspectors were able to identify at least four individuals who experienced great concern and inconvenience as a result of the defendant's conduct. The remaining owners of the money orders were also undoubtedly affected by the defendant's actions in this case.

It is important that the Court send a deterrent message to postal employees that stealing money orders and other things of value from the United States Mail is a matter of serious concern. Although the government acknowledges that the defendant readily admitted her crime, expressed her wish to plead guilty early in the investigation, and is now working two jobs, her offense conduct cannot be overlooked or minimized. Thus, the Court's sentence should contemplate not only the serious nature of the defendant's conduct, but the deterrent effect that it will have on others contemplating the theft of mail matter from the United States Postal Service. As such, the government requests that the Court impose a period of intermittent confinement as part of its sentence in this case.

**IV.     RESTITUTION**

Although the defendant stole and converted to her own use, $6,123.73 in money orders, the government has been unable to identify all of the victims in this case.  Several of the money order companies do not keep records of the names of individuals who purchase money orders from them.  Thus, the only way to ascertain the identity of the purchaser of a particular money order is if that  person made a complaint to the money order company or to the United States Postal Service.

To date, the United States has identified five victims whose money orders were stolen by the defendant.  The total amount of loss for these victims is calculated at $1,755.00. As the PSR states, the Court shall order full restitution to the victims without consideration of the economic circumstances of the defendant.  See PSR ¶ 96, citing 18 U.S.C. § 3664(f)(1)(A).  As such, the government requests that the Court order restitution in the amount of $1,755.00 to the identified victims in this case.

In addition, the government respectfully requests that should additional victims (who had purchased money orders identified in the Statement of Offense) come forward, they be permitted to petition the Court for an amended restitution order pursuant to18 U.S.C. § 3664(5).

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a term of intermittent confinement within the prescribed guideline range to be followed by a period of supervised release; that the Court order the defendant to participate in drug treatment programming as recommended by the United States Probation Office; and that the Court order the defendant to pay restitution.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        UNITED STATES ATTORNEY

_____

        KIM A. HERD
        Assistant United States Attorney
        United States Attorney's Office
        555 Fourth Street, N.W.        .
        Washington, D.C. 20530
        (202) 616-9370

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Government's Memorandum in Aid of Sentencing has been served electronically upon Danielle Jahn, counsel for the defendant.

_____

        KIM A. HERD
        ASSISTANT U.S. ATTORNEY