UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | CRIMINAL NO. 06-00025 (PLF/APK) |
| TARA D. JACKSON : | |
| Defendant. : | |
| : | |
| : | |

GOVERNMENT'S EMERGENCY MOTION TO REVOKE CONDITIONS OF RELEASE
PENDING FINAL REVOCATION HEARING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves the Court, pursuant to Federal Rule of Criminal Procedure 32.1(a)(6) and 18 U.S.C. § 3143(a), to revoke Defendant Jackson's release conditions and order her detained pending her final probation revocation hearing before USDC Judge Paul L. Friedman.

BACKGROUND

On May 21, 2007, the defendant appeared in court for a preliminary probation revocation hearing before Magistrate Judge Alan P. Kay. The court conducted the hearing. United States Probation Officer ("USPO") Danny Thomas reported that the defendant failed to report for drug testing and has failed to report for anger management treatment since the last hearing on April 18, 2007. Additionally, since April 18, 2007, the defendant incurred another arrest for Simple Assault in Washington, D.C. The defendant has conceded all alleged violations. While the defendant has been entirely uncooperative in addressing her drug addiction and anger management problem, she did complete a commercial driver's license program in May 2007. The USPO and the government recommended revocation and detainment of the defendant pending her final revocation hearing. Specifically, the USPO and the government recommended 10 months incarceration upon revocation. The court found by preponderance of the evidence that the defendant violated her probation. Pending the final probation revocation hearing, the court did not detain the defendant. Instead, the court ordered the defendant to remain on personal recognizance, subject to her probationary conditions, until the final probation

revocation hearing. Also, the court ordered the defendant to have no physical contact with Mr. Watts, her boyfriend.

Defendant's Violent Criminal History

Since 1992, defendant Jackson has incurred approximately 13 arrests. All of these arrests have been assaultive, harassing, or threatening in nature. Three of these arrests have resulted in convictions for Simple Assault and Destruction of Property (2001), Disorderly Conduct (2005), and Domestic Assault (2006). *See* Attachment 1, Pre-sentence Investigation Report. While defendant Jackson has been on probation, she has been arrested two times for assault and once for threats. In two of these arrests, which occurred on March 25, 2007 and May 2, 2007, the defendant engaged in assaultive behavior with her boyfriend, Mr. Watts. In the most recent arrest, which occurred on May 27, 2007, the government alleges that the defendant threatened her boyfriend's ex-girlfriend (complainant). Apparently, the defendant thought the complainant was calling her boyfriend, and she became angry about the telephone calls. The defendant, admittedly, called the complainant at her residence and left messages. In one of the defendant's messages, she stated, "I don't know why you're not answering your phone, why are you calling my man, I'm gonna fuck you up when I see you." The defendant's boyfriend identified the voice on the message as "Tara D. Jackson." *See* Attachment 2, Affidavit in Support of an Arrest Warrant. The defendant admitted to the investigating officer that she called and threatened the complainant; however, she claimed that she never intended to hurt the complainant.

This is not the first time that the defendant has behaved in a threatening manner toward a citizen in the community. In 2001, the defendant was convicted of Simple Assault because she struck her co-worker at the Brentwood Post Office in the head because she was angry that her co-worker put a mail tray on top of her lunch box. The defendant appealed this conviction, and the appellate court affirmed the lower court's decision. In 2006, after arguing with her daughter, the defendant punched her daughter in the mouth.

In addition to being involved in an assaultive domestic relationship with her current boyfriend, the defendant also threatens others when she feels it is necessary. The most recent

arrest for threats is consistent with her past criminal history, which memorializes her assaultive behavior toward others in her family and work environment.

Instead of taking responsibility for her anger management problem, the defendant has remained committed to it by behaving violently toward citizens in the community. She was ordered to complete an anger management program as part of her probation conditions in the 2001 Simple Assault case. In the instant case, the defendant was ordered to complete anger management. She failed to comply with this condition. Not only did she fail to comply with this condition, but she, at the initial visit for anger management treatment, engaged in similar type behavior with the therapist, causing her to be terminated from anger management treatment. As previously stated, the defendant continues to demonstrate that she rather behave violently than seek treatment to conform her behavior to acceptable standards.

Defendant's Drug Addiction

From the very young age of 15, the defendant began abusing alcohol and using marijuana. The defendant stated that she drank two or three 22-ounce beers on a daily basis. She claims that she stopped smoking marijuana at the age of 17. At age 19, the defendant began smoking crack cocaine, and she has continued to use cocaine until the present, as recently at May 3, 2007.

Since the defendant's release on January 7, 2006, in this case, and until the defendant's sentencing date on May 12, 2006, she tested positive for cocaine three times (1/7/06, 2/17/06 and 3/28/06). After the defendant was sentenced, she was placed in home confinement. Notably, the defendant did not have any positive drug tests during that period, from May 12, 2006 to July 18, 2006. After her period of home confinement, the defendant was also on probation in D.C. Superior Court for her Domestic Assault conviction. From mid July 2006 until December 2006, the defendant tested positive for cocaine eleven times (8/2/06, 8/21/06, 9/5/06, 9/7/06, 9/12/06, 10/13/06, 10/23/06, 11/1/06, 11/6/06, 11/13/06, and 12/8/06). Her most recent positive test for cocaine was on May 3, 2007 when she was arrested for domestic assault, again, with her boyfriend, Mr. Lewis Watts, in D.C. Superior Court. This case was no papered. While the

defendant was negative for any illegal narcotics on May 28, 2007 when she was arrested for threatening her boyfriend's ex-girlfriend and on June 6, 2006 (drug evaluation test), she claimed, in the Pre-trial Services Agency's report, that she has never used any substances.  Once again, the defendant failed to take responsibility for one of her problems that is directly related to her dangerousness in the community.

In the 2006 D.C. Superior Court Domestic Assault conviction, the defendant's probation was revoked by Superior Court Judge Motley on December 20, 2006, because she failed to report to CSOSA, failed to report for drug treatment and tested positive for cocaine repeatedly (as noted above).  The defendant conceded the alleged violations, and the court revoked her probation, sentencing her to 45 days in jail.

On December 1, 2006, approximately 7 months after being placed on probation in United States District Court, the defendant entered inpatient drug treatment.  On December 4, 2006, she reported to the facility; however, she refused to cooperate with the staff and left the program within less than a hour of reporting.  The program declined to accept her back because of her belligerent behavior.

Defendant Is a Danger to the Community

On June 14, 2007, the undersigned Assistant United States Attorney ("AUSA") received a voicemail message from USPO Danny Thomas.  He stated that he observed the defendant at the commercial driver's licence training program, D.C. Village.[1]  In a subsequent conversation, USPO Danny Thomas stated the he observed the defendant preparing to conduct a practice drive of a tractor-trailer.  The defendant participated in this program while she was being supervised on probation in United States District Court.

The defendant is certainly a danger to community as an individual and a truck driver due to her anger management problem and extensive drug addiction.  USPO Danny Thomas stated in a USPO memorandum dated May 11, 2007, "it is clear that Ms. Jackson is not willing to follow

---

[1] The defendant, through counsel, on May 21, 2007 reported that she graduated from the commercial driver's license training program.  USPO Danny Thomas has not verified this information as of June 14, 2007.

Court's orders[2], nor instructions of the probation office regarding the conditions of probation." More specifically, the defendant failed to comply with any rehabilitative efforts by the United States Probation Office.

These violations of the defendant's release conditions show not only a disregard of a court order to not commit any new crimes during her release, but they are especially egregious as they coincide with the recent court dates in this matter. The defendant's latest arrest and pending case occurred 7 days after she appeared before Magistrate Judge Kay. In addition to stating that she intended to violate her stay away order, demonstrating no respect for the court's order, she has committed a new crime by threatening another witness.

<u>Legal Argument</u>

Federal Rule of Criminal Procedure 32.1(a)(6) states that the defendant has the burden of proving that she will not flee or pose a danger to any other person or to the community pending the final revocation hearing. Due to the defendant's persistent refusal to submit to treatment to address her anger management problem and drug addiction, the Court cannot and should not have any faith in a promise from the defendant that she would be amenable to community supervision. The government asserts that the defendant cannot surmount her burden due to her personal characteristics, mental condition, past conduct, drug addiction history, and criminal history. Even though it is not the government's burden to establish the defendant's dangerousness, it has established by clear and convincing evidence that the defendant is a danger to the community. Pursuant to the statutory presumption of dangerousness at this stage in the case, the defendant should be held without bond pending the final revocation hearing.

---

[2] On May 21, 2007, Magistrate Judge Kay specifically ordered the defendant to stay away from her boyfriend, Mr. Lewis Watts. The court asked the defendant directly if she could abide by the court's order, and the defendant stated that she could. The undersigned counsel learned from USPO Danny Thomas that the defendant stated that she was not going to stay away from Mr. Watts because she was in love with him. The defendant made this statement after the court's order was issued and after she promised to abide by the court's order.

WHEREFORE, the government respectfully requests that the Court revoke Defendant's release conditions and order her preventatively detained. Specifically, the government requests that the Court set an emergency hearing as soon as possible.

                              Respectfully submitted,

                              JEFFREY A. TAYLOR
                              UNITED STATES ATTORNEY

                              JEFFREY RAGSDALE
                              ASSISTANT UNITED STATES ATTORNEY
                              CHIEF, FEDERAL MAJOR CRIMES SECTION


                              /S/
                              _____
                              ANGELA S. GEORGE
                              ASSISTANT UNITED STATES ATTORNEY
                              D.C. Bar 470-567
                              555 4TH Street, N.W., Room 4444
                              Washington, DC 20530
                              (202) 514-7315