\    THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| v. : | |
| : | Crim. No. 06-00025 (PLF/APK) |
| **TARA D. JACKSON,** : | |
| : | |
| **Defendant.** : | |

# GOVERNMENT'S RECOMMENDATION AND REQUEST FOR THIRD PARTY RISK NOTIFICATION IN DEFENDANT' S FINAL HEARING ON VIOLATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, recommends that the defendant's probation be revoked pursuant to 18 U.S.C. § 3565(b)(4) and a mandatory incarceration sentence at the high end of the guidelines be imposed.  Additionally, the government respectfully requests that this Court, pursuant to Standard Probation Condition No. 12, order the United States Probation Office to notify Toni Thomas Associates, Inc.'s Commercial Driver's License Training Program ("TTIA") that the defendant poses a present risk to the community due to the defendant's personal history, characteristics, and extensive drug addiction and anger management history.

The government requests that the Court accept this pleading as part of the government's allocution at the defendant's final hearing on violation on June 27, 2007.[1]

---

[1] The government planned to file this pleading on June 28, 2007 when the final hearing on violation was scheduled for July 3, 2007. On June 26, 2007, the government received notice from the Court's chambers that the hearing on violation had been rescheduled for June 27, 2007 @ 9 a.m.  Thus, the government is filing this pleading at the earliest possible time before the scheduled hearing on violation.

**Procedural Background**

On May 12, 2006, defendant Tara Jackson pled guilty to Theft of Mail Matter by Officer or Employee in violation of 18 U.S.C. § 1709. After pleading guilty, the defendant appeared before this Court and was sentenced to five years of probation. The defendant's supervision is scheduled to end on May 11, 2011.

On February 5, 2007, Magistrate Judge Alan P. Kay conducted a preliminary hearing on violation. At that hearing, the defendant conceded three alleged violations, which are memorialized in the USPO Memorandum dated December 13, 2006. On May 21, 2007, Magistrate Judge Kay conducted another preliminary hearing on violation. At that hearing, the defendant conceded six alleged violations, which are memorialized in USPO Memoranda dated April 20, 2007, and May 11, 2007.[2] The magistrate court prepared a report and recommendation. On June 25, 2007, Magistrate Judge Facciola conducted a status hearing, and the court addressed the government's request to revoke the defendant's release conditions pending the final hearing on violation. The court denied the government's request and allowed the defendant to remain on probation until the final hearing on violation.

**Factual Background**

The government incorporates by reference all facts delineated in the same section from its pleading entitled Amended Government's Emergency Motion to Revoke Conditions of Release Pending Final Revocation Hearing that was filed on June 15, 2007 in this case.

---

[2] Although the electronic docket notes that "[t]he defendant concedes the six violations," there are actually seven violations listed in the USPO Memoranda.

### Revocation of the Defendant's Probation

Based upon the defendant's past non-compliance track record in court-ordered probation periods and her continued refusal to comply with any probationary conditions in this case, the government recommends that the defendant's probation be revoked and a 10 month jail sentence be imposed.

During the past year, defendant Jackson has continually refused to accept her probationary conditions and comply with court orders. Throughout her supervision period, the defendant has constantly ignored the instructions of her probation officer and has remained committed to her decision to do what she believes is appropriate. Recently, the government learned at the June 25, 2007 status hearing that the defendant has been in compliance for a brief period. USPO Danny Thomas stated that she has attended two drug counseling sessions and one anger management counseling session. Since May 3, 2007, the defendant's drug tests have been negative. Additionally, the defendant, through counsel, stated that TTIA gave her a twelve week extension to complete the Commercial Driver's License program.

The government asserts that the defendant's brief period of compliance was only done to avoid potential revocation and/or a jail sentence upon revocation. The government contends that the Court should not be persuaded that the defendant will continue to comply with her probationary conditions if given the opportunity. Magistrate Judge Kay was extraordinarily patient with the defendant and allowed her several opportunities to come into compliance during the six months that he monitored her non-compliance. The defendant always promised the court that she would comply with its orders, but her actions always illustrated her true intentions. The defendant was re-arrested on several occasions, and presently, she has a Threats case pending in D.C. Superior Court in which she threatened her boyfriend's ex-girlfriend because she called

him.  This most recent criminal activity is consistent with how the defendant behaves when she is in the community and not standing in front of the court.  The D.C. Superior Court warrant states that defendant Jackson said "I do not know why you are not answering your phone, why are you calling my man, I'm gonna fuck you up when I see you."  The defendant engaged in this conduct within ten days of her final preliminary revocation hearing before Magistrate Judge Kay.  At that hearing, the defendant promised to stay out of trouble and to stay away from her boyfriend, Lewis Watts.  In addition to engaging in this behavior, defendant Jackson told USPO Danny Thomas that she was not going to stay away from Mr. Watts because she was in love with him.  The defendant's criminal history and non-compliance while on probation in this case and in others indicate that her promises should not be trusted.

     Moreover, this probationary period is not the defendant's first opportunity to address her problems.  In fact, she has had three periods of probation prior to the instant one.  In 1989, she was convicted of Welfare Fraud and was placed on probation for five years.  Next, in June 2001, the defendant was convicted of Simple Assault and Destruction of Property in D.C. Superior Court and received a six-month period of probation.  In this case, she was required to complete anger management.  Then, approximately four years later in January 2006, she was convicted of Domestic Assault and was placed on probation for a year.  The court ordered her to complete drug and alcohol treatment and a domestic assault program.  She unsuccessfully completed this period of probation and was revoked.  D.C. Superior Court Judge Motley sentenced her to 45 days in jail.  Thus, the defendant has had three opportunities through court supervision over the last eighteen years to address her drug addiction and anger management problems.

     Based upon this information and the defendant's 12 positive tests for cocaine, the government urges the Court to adopt the government's recommendation and not hold that the

defendant's recent decision to attend two drug counseling sessions warrants the Court placing the defendant in another substance abuse program under 18 U.S.C. § 3563(e), departing from 18 U.S.C. § 3565(b).

### Third Party Risk Notification to TTIA

In light of the defendant's documented drug addiction and anger management problems, the government asserts that the defendant poses a present risk of harm to the community and that third-party risk notification to TTIA would protect the public by allowing that agency to monitor whether the defendant should receive a commercial driver's license. In making this request, the government relies on the general duty owed by probation officers to the public and on Standard Probation Condition No.12. *See* Chapter 4, Section D of Guide to Judiciary Policies and Procedures[3] and *Parsons v. Pond*, 126 F. Supp. 2d 205, 220 (D. Conn. 2000).

United States Probation Officers "have an equal obligation to control risk to the public and [to] provide correctional treatment to the offender." *Fuller-Avent v. U.S. Prob. Office,* 2006 WL 3512148, at *1 (D.C. Cir. Nov. 30, 2006) (citation omitted) (citing Guide to Judiciary Policies and Procedures, vol. X (U.S. Probation Manual), ch. IV, at 36, part D.3 (1992)). Based on this duty to protect the public, the government asserts that probation officers have a duty to warn specific third parties of particular risks the officers reasonably foresee to exist. *Fuller-Avent*, 2006 WL 3512148, at *1; *United States v. Doe*, 79 F.3d 1309, 1314-1315 (2d Cir. 1996); *Weissich v. United States*, 4 F.3d 810, 813 (9th Cir. 1993).

The probation officer determines whether a reasonably foreseeable risk of harm exists by evaluating the supervised releasee's job, prior criminal background and conduct, and instant

---

[3]This excerpt came from the Guide to Judiciary Policies and Procedures and was provided to the undersigned counsel by USPO Marius Davis.

offense. Also, the probation officer analyzes if the "circumstances of the relationship between the probationer and the third party . . . suggest that the probationer may engage in a criminal or antisocial manner *similar* or *related* to past conduct," creating a reasonably foreseeable risk of harm. *Doe*, 79 F.3d at 1318; *Weissich*, 4 F.3d at 813 (citations omitted). *See Fuller-Avent*, 2006 WL 3512148, at *1.

The inclusion of Standard Condition No.12 in the Judgement and Commitment authorizes the defendant's probation officer to notify third parties of particular risks based on the defendant's personal history, characteristics, and criminal conduct, even if the risks are unrelated to the defendant's instant conviction. *See Parsons*, 126 F. Supp. 2d at 220 (holding Standard Condition No. 13 permitted officer to notify third party of risk based on defendant's physical and emotional abuse of former associates though unrelated to instant convictions of false statements on medical application and attempt to buy firearm). The defendant's extensive and non-managed drug addiction as well as her substantial anger management problem create a reasonably foreseeable risk of harm to the community.

The defendant's criminal history and personal characteristics from 1989 until the present indicate that the defendant reacts violently in and self-medicates to handle stressful and confrontational situations. A reasonable foreseeable risk of harm to the public exists if the defendant becomes a commercial driver at this point in her life. Commercial drivers deal with very stressful and often confrontational situations in their profession. The inherent stressful characteristics of that profession, such as long driving hours, intense traffic conditions and non-negotiable timing deadlines, create a situation in which the defendant will more than likely react in the same way that she has in the most recent past. These stressful conditions coupled with the defendant's extensive drug addiction and anger management problems establish that there is a

reasonable foreseeable risk of harm to the public. The defendant does not have the coping mechanisms to properly control herself in this type of work environment. For example, when the therapist at the anger management facility explained that she had to wait for some time before he could see her, the defendant engaged in an argument with the therapist, causing the therapist to discharge her from the program. The defendant thought that her behavior was appropriate, and subsequently, she asked USPO Danny Thomas to locate another facility where she could receive treatment.

Most significantly, if the Court relies on her recent compliance, declines the government's request to notify TTIA, and allows the defendant to receive her commercial driver's license, the defendant could decide to self-medicate while operating commercial vehicles, exposing the public to an enormous amount of danger. Therefore, the government requests that this Court order the USPO to notify TTIA of this risk.

## **Conclusion**

For the foregoing reasons, the government respectfully requests that this Court revoke the defendant's probation, impose a mandatory 10 month jail sentence, and instruct the USPO to notify TTIA of the third-party risk.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

_____/s/_____
ANGELA GEORGE
DC Bar No. 470567
Assistant United States Attorney
555 Fourth Street, N.W., Rm. 4444
Washington, D.C. 20530
(202) 514-7315
Angela.George@usdoj.gov